STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-42

GAIL TAYLOR,

      Plaintiff

      v.

ROBERT P. GAGNE,

      Defendant

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

SEP 30 2002

This matter is before the court after bench trial.

On June 26, 1997, the plaintiff picked up her son in Winthrop in her automobile and proceeded toward her home in Chelsea. Some time just before 4:00 p.m., she crossed the Memorial Bridge, west to east, in Augusta. Rather than enter the eastside traffic circle, she made use of a short bypass directly from the Bridge off-ramp toward Stone Street, her destination. At the intersection of the bypass with Stone Street, she encountered a yield sign and she stopped. Intending to take a right turn onto Stone Street, she looked to her left and observed a truck with a piece of heavy equipment negotiating the traffic circle. Her first impression was that she could enter Stone Street before the truck so she removed her foot from the brake allowing her car to move ahead slowly. Upon noting the speed of the truck with the piece of equipment, she decided she could not safely enter Stone Street in front of the truck and applied the brake again bringing her vehicle to a complete stop.

The defendant, an employee at Camp Keyes in Augusta, was returning to his home on Hospital Street after work. He too crossed the Memorial Bridge from west to east and found himself on the same traffic circle bypass. He observed the plaintiff's vehicle stopped at the yield sign and he stopped his vehicle a few feet to the rear of

plaintiff's vehicle. Noting that the plaintiff had removed her foot from the brake by the extinguishment of her brake lights, and noting her car moving forward, he looked to his left to determine the circumstances of oncoming traffic from the traffic circle. In doing so, he did not note that plaintiff had stopped her vehicle a second time and he hit her vehicle in the rear bumper.

The defendant was driving a 1995 Toyota Tacoma pickup, extended cab, two-wheel drive, standard transmission. The front license plate and holder, attached to the front of his vehicle at the bumper, was bent rearward one or two inches. The plaintiff was operating a 1989 Saab 9000. Her rear bumper was pushed downwards approximately one-half inch.

At point of impact, the plaintiff was looking to her left and somewhat to the rear.[1] Consequently, the attitude of her upper body at point of impact was twisted toward the left with her head looking over her left shoulder. She experienced the usual movement of her body from a rear-end collision, her body moved forward while her head moved backwards and upon her vehicle coming to rest, her body stopped and her head moved forward. As a result, she suffered a classic whiplash soft tissue injury.

Although the circumstances of this accident occur routinely at intersections, particularly at traffic circles, it is clear that while an operator of a motor vehicle may anticipate that another operator will comply with the law, there is no evidence that the plaintiff violated any rule of the road. The accident simply was the usual circumstance where a driver anticipates the continuation of movement of the preceding vehicle at a stop or yield sign. Therefore, the following driver does not observe where he is driving

---

[1] The intersection is not a 90° angle. Stone Street approaches that location of the yield sign at an interior angle less than 90°.

2

when such rear-end collisions occur. The court finds no negligence in the plaintiff and, as routine as it was, the actions by the defendant were negligent and he therefore must bear the responsibility for the collision.

The plaintiff, a six foot one inch 200 plus pound mother of two, has experienced low back and neck problems since the early 1990's and has been under the sporadic care of a chiropractor during the entire period of time. In October of 1990, she first visited her attending chiropractor with a low back complaint apparently arising out of bicycle riding experiences. Subsequently, she experienced injuries from lifting objects at her place of employment resulting in neck stiffness and occasional headaches. Between January of 1995 and June 26, 1997, the plaintiff had received four chiropractic treatments, all relating to her low back and none relating to her neck problems. She treated with the chiropractor for these problems until June of 1997. While her chiropractor believed that her conditions were stabilized, at that time he expected to continue to treat her depending upon her physical activities.

While plaintiff experienced some discomfort in her neck, shoulders, and back at the time of the accident, she did not believe it serious enough to require professional treatment and she declined assistance from rescue personnel. Her intention was to self-treat at home. When she did arrive home a couple hours later, she used ice packs, pain killer and relaxation. The following day, however, she was experiencing neck, shoulder and back pain and she presented herself to a medical center where she was examined, diagnosed as neck strain, given relaxants and pain killer.

On July 19, 1997, 23 days after the accident, she was seen by her regular chiropractor. After multiple diagnostic tests, it was determined that she had received soft tissue injury to her cervical spine causing neck pain and stiffness, shoulder pain and

3

back pain. She also started experiencing headaches. In addition to the chiropractic treatment undertaken by the plaintiff, she was referred to physical therapy by the chiropractor to restrengthen and to recondition the muscles of her neck. She successfully completed the regimen of physical therapy and, since the date of the accident, has continued the exercises recommended by the therapist. In May of 1998, she was released by the chiropractor who reported that she had achieved maximum medical improvement, that she was without permanent impairment but that she would have residual effects, described as episodes of discomfort arising out of and dependent upon her physical activities. In fact, she has been treated off and on since May of 1998 by the chiropractor for shoulder and upper thoracic pain and headaches.

In 1998, the plaintiff slipped on the ice and aggravated her neck injury. According to her chiropractor, while it was aggravated, it did not do additional damage. As of July 4, 1997, the plaintiff is able to tolerate pain without having to use pain killers. She experiences some pain when lifting heavy weights (contrary to chiropractor's instructions), and while experiencing some stiffness if standing for long periods of time, stiffness in the morning when getting out of bed and stiffness at the end of a long work day, otherwise she is fully able to handle all activities of daily living. As of June 4, 1999, she reports that she does not require any reasonable accommodations in her new place of employment in order to perform the functions of the job.

From an initial diagnosis of hyperextension/flexion of cervical injury along with multiple cervical subluxations and nerve irritation, as of April, 1998 the diagnosis was multiple cervical subluxations, nerve irritation. Mild disc degeneration noted at that time is not related to the motor vehicle incident. In April of 1998, her chiropractor further reported:

4

It is the opinion of this clinic that Ms. Taylor has reached maximum medical improvement (MMI). Although symptomatology has been reduced at this time, she will continue to experience minimal to moderate pain when engaging in any activity. Any future trauma to her spine could predispose her to complications that could be irrevocable. The prognosis for this patient is fair, with residuals. She will require support care as needed for a period for 4 to 6 months.

It is the defendant's position that the plaintiff has simply aggravated a pre-existing condition and that the aggravation was stabilized by the Spring of 1998. He further denies responsibility for chiropractic treatment post-May of 1998 and argues that continuing chiropractic treatment for her neck and back subsequent to May of 1998 is a pre-accident condition wherein she routinely sought and received chiropractic for discomfort based upon the activities of her employment and home life. While plaintiff admits she suffered headaches, neck pain and stiffness prior to the accident, she claims that it is more severe, more often and she is more affected by physical activities than she was before the accident. The only expert evidence on these issues is that her cervical spine condition was weakened prior to the accident but the injury to the soft tissue and the subsequent healing and scar tissue remaining have provided less support to her cervical spine, has provided less flexibility to her cervical spine, and therefore her present condition constitutes a new injury with residual effects. The chiropractor further opines that the headaches are the result of soft tissue injuries to the cervical spine affecting blood flow.

The court is satisfied that at the time of the accident the plaintiff had a bodily condition that made her more susceptible to injury than a person in good health and, therefore, her injuries are greater than would have been suffered by a person in good health under the same circumstances. However, the court is also satisfied that to some extent the defendant has met his burden in establishing that some portion of the post-

5

accident symptoms and treatment by the chiropractor, most particularly those associated with the back, are simply a continuation of the previous condition and her history of chiropractic treatments since May of 1998 to a large extent are consistent with her treatment regimen prior to the accident and therefore not fully capable of being attributable to the defendant's negligence. Therefore, it is the court's intention to separate and award only those damages which the court finds were the defendant's fault.

The court is satisfied that the plaintiff has met her duty to exercise reasonable care to diminish or to mitigate the damages resulting from the injury and that she has taken such steps as are reasonable and prudent to effect a cure for the reduction of their severity.

As of the time of the stabilization of plaintiff's injuries from the accident, she had incurred chiropractic treatment expenses of $3,159. Subsequent to that entry of June 12, 1998, she has incurred chiropractic expenses in the amount of $414 which this court finds attributable to the injuries received in this accident for a total chiropractic expense of $3,573. Chiropractic expenses included a digital analysis of x-rays conducted by Spinal Imaging, Inc. on July 25, 1997, at a cost of $75 and two visits to the Winthrop Health Center, the first day after the accident and a follow-up visit on July 1st for a total of $125. There is an undisputed claim for medication of June 27, 1997, in the amount of $36.31 and the physical therapy sessions, directly attributable to this accident, which totals $349.73. It is impossible to determine to any precise degree that amount of wages lost attributable to this accident. The plaintiff testified that she lost certain days because she was "not feeling well." Since there does not appear to be any evidence to indicate any other source of her "not feeling well" and they are lost time within the period of

treatment between the date of the accident and prior to May of 1998, the court finds the plaintiff is entitled to special damages for 103.2 hours at her employment at a rate of $11.30 for a total of $1,166.16. Accordingly, the court approves special damages in the amount of $5,325.20.

Whether or not this plaintiff was to be in an accident causing a whiplash effect, she was going to need chiropractic treatment neck, headache and back problems as has been her history. It is clear, however, that the accident created an injury to an already weakened condition and that the effect on plaintiff now, in the past, and in the future is greater than one would ordinarily expect out of such a motor vehicle collision. While the negligence is absolute, not all of plaintiff's physical problems are attributable to this accident. She is entitled to a reasonable compensation, which has been proven by a preponderance of the evidence, for her pain, discomfort, fear, anxiety, other mental and emotional distress, or anguish including the loss of enjoyment of life suffered by her in the past, and that she can be reasonably expected to suffer in the future. The court places that compensation at $18,000.

The entry will be:

Judgment for plaintiff in the amount of $23,325.20.

Dated: September 4, 2002

Donald H. Marden
Justice, Superior Court

7

GAIL TAYLOR - PLAINTIFF

Attorney for: GAIL TAYLOR
SUMNER LIPMAN
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

vs
ROBERT P GAGNE - DEFENDANT

Attorney for: ROBERT P GAGNE
JEFFREY EDWARDS
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2001-00042

DOCKET RECORD

Filing Document: COMPLAINT                    Minor Case Type: AUTO NEGLIGENCE
Filing Date: 03/12/2001

Docket Events:

08/02/2001 FILING DOCUMENT - COMPLAINT FILED ON 03/12/2001

08/02/2001 Party(s):  GAIL TAYLOR
           ATTORNEY - RETAINED ENTERED ON 03/12/2001
           Defendant's Attorney:  SUMNER LIPMAN

08/02/2001 Party(s):  GAIL TAYLOR
           SUMMONS - CIVIL SUMMONS FILED ON 03/21/2001

08/02/2001 Party(s):  ROBERT P GAGNE
           RESPONSIVE PLEADING - ANSWER FILED ON 03/26/2001

08/02/2001 ATTORNEY - RETAINED ENTERED ON 03/26/2001
           Defendant's Attorney:  JEFFREY EDWARDS

08/02/2001 ORDER - SCHEDULING ORDER ENTERED ON 03/26/2001
           DONALD H MARDEN , JUSTICE
           DISCOVERY DEADLINE IS 11/26/01.

08/02/2001 Party(s):  GAIL TAYLOR
           DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 04/06/2001
           PLAINTIFF'S INTERROGATORIES PROPOUNDED TO THE DEFENDANT AND PLAINTIFF'S REQUEST FOR
           PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT SERVED ON JEFFREY T. EDWARDS ESQ. ON
           4/4/01.

08/02/2001 Party(s):  ROBERT P GAGNE
           DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 04/27/2001
           ANSWERS TO INTERROGATORIES BY DEFENDANT ROBERT P. GAGNE SERVED ON SUMNER LIPMAN, ESQ. ON
           4/26/01.

08/02/2001 Party(s):  ROBERT P GAGNE